

EOD
08/23/2007

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| REGINALD DELMAR HOLMES | § | CASE NO. 05-45106 |
| and LENORA JEANETTE HOLMES, | § | (Chapter 7) |
| Debtors. | § | |
| _____ | § | |
| | § | |
| VENESTA JONES, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | ADV. NO. 05-04278 |
| | § | |
| REGINALD DELMAR HOLMES | § | |
| and LENORA JEANETTE HOLMES, | § | |
| Defendants. | § | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This matter is before the Court following a trial of the complaint by Venesta Jones (the "Plaintiff") against Reginald Delmar Holmes and Lenora Jeanette Holmes (collectively, the "Defendants"). In her adversary complaint, the Plaintiff sought a judgment that her claim against the Defendants for unauthorized charges the Defendants placed on the Plaintiff's credit cards is not dischargeable in bankruptcy under 11 U.S.C. §523(a)(2) or (a)(4). The Court, having considered the pleadings, the evidence presented at trial, and the arguments of counsel, finds that judgment should be entered for the Plaintiff for the reasons stated at the conclusion of trial and set forth more fully in the following findings of fact and conclusions of law.

### I. Findings of Fact

1. Prior to 1998, Venesta Jones operated a company called Strategic Resources, Inc. Venesta is the sister of Lenora Holmes.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW- Page - 1**

2. In or around 1997, Lenora and her husband, Reginald, started a shuttle bus business in Detroit, Michigan. Venesta loaned Lenora and Reginald money to start up their business. Additionally, with Venesta's permission, Lenora and Reginald initially used the name of Venesta's corporation for their business -- with the understanding that they would create their own corporate entity within the next several months. The shuttle bus company eventually operated as Executive Transportation, Inc.

3. Lenora and Reginald's testimony that Venesta was employed by or a partner in their shuttle bus business was not credible.

4. In or around April 1998, Lenora asked Venesta if she (Venesta) could add Lenora's name to Venesta's account with American Express ("AMEX"). Lenora represented that she needed a credit card to secure van rentals for her business and that no charges would actually be made on the account. Lenora and Reginald had bad credit and were unable to obtain a credit card account in their own names.

5. Venesta instructed her sister not to actually use the AMEX card, and Lenora represented that she would not place any charges on the card. Based on the promise from her sister, Venesta added Lenora's name to the AMEX account. Lenora also received her own AMEX card.

6. AMEX sent monthly statements of account activity to a post office box controlled by Venesta. Venesta checked the box periodically. As of April 7, 1998, there was no balance on Venesta's AMEX account.

7. Sometime in June of 1998, Venesta suffered a leg injury which caused her to be in a cast for approximately two months. Venesta could not drive during this time and asked

**FINDINGS OF FACT AND CONCLUSIONS OF LAW- Page - 2**

Lenora to assist her by picking up her mail at her post office box. Venesta gave Lenora a key to her post office box for this purpose.

8. In spite of her promise to her sister, Lenora began charging amounts on Venesta's AMEX card. The total unauthorized charges amounted to $16,895.44 from the period from May 7, 1998 through July 11, 1998. Venesta was not aware of the charges because Lenora did not bring the AMEX statements to Venesta with her other mail. In or around August 1998, Venesta became suspicious when Lenora did not provide her with an AMEX statement. She therefore phoned AMEX and learned that there was a balance owed on her AMEX account.

9. The AMEX statements show charges supposedly made by Venesta as well as charges by Lenora and Reginald. The charges credited to Venesta on the statements actually were made by Lenora and Reginald. Lenora's testimony that Venesta made or authorized the charges credited to her (Venesta) was not credible. Lenora's testimony that the charges were made for Venesta's business also was not credible.

10. In addition to making unauthorized charges on Venesta's AMEX account, Lenora and Reginald took some convenience checks for Venesta's credit card account with First USA. Reginald and or Lenora retrieved these convenience checks from Venesta's post office box. Lenora and/or Reginald forged Venesta's signature on multiple convenience checks totaling $17,700.00. The checks were made out to Strategic Resources, Inc. and deposited into an account for Strategic Resources, Inc. Lenora and Reginald then used Venesta's personal identification number or "PIN" to withdraw the deposits from the account. Lenora and Reginald used the funds for personal expenses as well as expenses related to their shuttle bus business.

11. Venesta discovered that her signature had been forged when she received a

**FINDINGS OF FACT AND CONCLUSIONS OF LAW- Page - 3**

statement from First USA in August 1998.

12. Venesta contacted First USA and informed them that her account was being fraudulently charged. First USA closed the account at her request. However, Lenora and Reginald continued to attempt to write checks against the First USA account in October 1998.

13. While the Holmes ultimately paid most of the balance owed on the First USA account, Venesta testified, credibly, that she made two payments totaling $625 on this account for the unauthorized charges made by Lenora and Reginald.

14. Venesta Jones made two payments totaling $2,300.00 toward her AMEX account prior to September 12, 1998. Venesta transferred the remaining balance of $16,595.44 to an account with MBNA account on September 12, 1998, because MBNA charged less interest than AMEX.

15. On April 3, 1999, Venesta sued the Defendants in state court to recover the balance due for the unauthorized charges placed on her AMEX and First USA accounts, among other things. This lawsuit ultimately resulted in a settlement agreement. The Defendants defaulted under the settlement agreement by failing to make required payments. On December 23, 1999, Venesta obtained an Order of Judgment in the principal amount of $21,394.25 for the unpaid balance of the credit card accounts.

16. Venesta made three payments of $347 each on the MBNA account. Venesta eventually paid the entire balance owed on the MBNA account by making a payment of approximately $23,000 using proceeds from the settlement of a lawsuit. The final payment included accrued finance charges on the account.

17. Venesta has incurred attorneys' fees in the amount of approximately $20,000.00

**FINDINGS OF FACT AND CONCLUSIONS OF LAW- Page - 4**

in enforcing her rights against the Holmes in various courts, including this Court.

## II. Conclusions of Law

1.    This Court has jurisdiction of the proceeding pursuant to 28 U.S.C. §1334. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

2.    In an action to determine the dischargeability of a debt, the creditor has the burden of proof under a preponderance of the evidence standard. *Grogan v. Garner*, 498 U.S. 279, 286 (1991). "Intertwined with this burden is the basic principle of bankruptcy that exceptions to discharge must be strictly construed against a creditor and liberally construed in favor of a debtor so that the debtor may be afforded a fresh start." *Hudson v. Raggio & Raggio, Inc. (In re Hudson)*, 107 F.3d 355, 356 (5th Cir. 1997). Thus, without satisfactory proof of each element of the causes of action asserted by Venesta, judgment must be entered for the Defendants.

### A. 11 U.S.C. §523(a)(2)

3.    Section 523(a)(2)(A) of the Bankruptcy Code provides that:

> [A] discharge under §727 . . . of this title does not discharge an individual debtor from any debt for money, property, or services, . . . to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

11 U.S.C. §523(a)(2)(A). This section encompasses similar but distinct causes of action. Although other circuits have applied a uniform standard to all §523(a)(2)(A) actions, the Fifth Circuit has distinguished the elements of "actual fraud" on the one hand and "false pretenses and false representations" on the other. *See RecoverEdge L.P. v. Pentecost*, 44 F.3d 1284, 1292 (5th Cir. 1995).

4.    To prove that a debt is non-dischargeable as having been obtained by false

**FINDINGS OF FACT AND CONCLUSIONS OF LAW- Page - 5**

pretense or representation, a creditor must establish (i) the existence of a knowing and fraudulent falsehood, (ii) describing past or current facts, and (iii) that was relied upon by the creditor. *See Alison v. Roberts (In re Allison)*, 960 F.2d 481, 483 (5th Cir. 1992); *Bank of La. v. Bercier (In re Bercier)*, 934 F.2d 689, 692 (5th Cir. 1991); *RecoverEdge L.P.* at 1292-93. Actual fraud requires the additional proof of the debtor's intent to deceive and a loss by the creditor which is proximately caused by the fraud. *See RecoverEdge L.P.* 44 F.3d at 1293.

5.   "'Justifiable reliance' represents a lesser burden on fraud plaintiffs than what 'reasonable reliance' might imply." *Beijing Metals & Minerals Import/Export Corp. v. American Business Ctr., Inc.,* 993 F.2d 1178, 1186 (5th Cir. 1993) (internal citations and quotations omitted). To determine "justifiable reliance," courts inquire whether, "given a fraud plaintiff's individual characteristics, abilities, and appreciation of facts and circumstances at or before the time of the alleged fraud -- it is extremely unlikely that there is actual reliance on the plaintiff's part." *Id.* However, reliance is not justifiable when a representation is "shown by facts within [the plaintiff's] observation to be so patently and obviously false that [the plaintiff] must have closed his eyes to avoid discovery of the truth." *Stanley v. Wal-Mart Stores, Inc.*, 839 F.Supp. 430, 434 (N.D. Tex. 1993) (quoting *General Motors Corp. v. Courtesy Pontiac, Inc.*, 538 S.W.2d 3, 6 (Tex.Civ.App.--Tyler 1976, no writ)).

6.   Here, Lenora represented to Venesta that she would not place charges on Venesta's AMEX account. Lenora's representation was false. She made the representation to Venesta for the purpose of deceiving Venesta. Venesta relied on the representations of her sister and sustained losses in the amount of $26,341 as a proximate result of Lenora's fraudulent representations. Venesta's reliance was justifiable because, given the particular facts and

**FINDINGS OF FACT AND CONCLUSIONS OF LAW- Page - 6**

circumstances of this case, she could not have reasonably known or discovered that Lenora's representations were false.

7. For the foregoing reasons this Court finds that the Defendants' obligation to Venesta in the amount of $26,341 for Venesta's repayment of the unauthorized charges placed on her AMEX account is non-dischargeable under 11 U.S.C. §523(a)(2)(A).

### **B. 11 U.S.C. §523(a)(4)**

8. Neither Venesta's Complaint nor the Joint Pretrial Order specifically state the legal basis for Venesta's claim under 11 U.S.C. §523(a)(4) or which facts support this cause of action. Venesta's claim under §523(a)(4) appears to be an embezzlement claim relating to the unauthorized charges placed on her accounts with AMEX and First USA.

9. A debt arising from embezzlement is excepted from discharge as follows:

A discharge under section 727, 1141, 1228(a), 1228(b) or 1328(b) of this title does not discharge an individual debtor from any debt –

    (4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny

11 U.S.C. §523(a)(4).

10. Embezzlement is defined for the purposes of §523(a)(4) as the "fraudulent appropriation of property by a person to whom such property has been entrusted, or into whose hands it has lawfully come." *Matter of Miller,* 156 F.3d 598, 602 (5th Cir. 1998).[1] "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the

---

[1] "[Embezzlement] differs from larceny in that the original taking of the property was lawful, or with consent of the owner, while in larceny the felonious intent existed at the time of the taking. Larceny is defined as the fraudulent and wrongful taking and carrying away of the property of another with intent to convert such property to the taker's own use without the consent of the owner." *McDaniel v. Border (In re McDaniel)*, 181 B.R.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW- Page - 7**

circumstances indicate fraud." *Brady v. McAllister (In re Brady),* 101 F.3d 1165, 1173 (6th Cir. 1996); *In re Sokol,* 170 B.R. 556, 560 (Bankr. S.D.N.Y. 1994); *cf. Coburn Co. v. Nicholas,* 956 F.2d 110, 111 (5th Cir. 1992) (requiring an intent to defraud for a determination of whether there has been a breach of a fiduciary relationship under §523(a)(4)).

11. Here, Venesta entrusted Lenora with an AMEX card for Venesta's AMEX account. Lenora's charges on the AMEX account were not authorized by Venesta, and Lenora did not intend to pay for the charges she placed on Venesta's AMEX account. As such, Lenora's acts constitute embezzlement pursuant to 11 U.S.C. §523(a)(4).

12. After an injury to her leg that prevented her from driving for a period of time, Venesta also entrusted Lenora with a key to her post office box for the purpose of retrieving her mail. However, Lenora used the key to take convenience checks Venesta had received from First USA. Lenora and Reginald then forged Venesta's signature on these convenience checks for the purpose of obtaining funds for their own use. The actions of Lenora and Reginald were unauthorized, and they had no intention of repaying Venesta for the charges the placed on Venesta's First USA account. As such, the Defendants' acts constitute embezzlement pursuant to §523(a)(4) of the Bankruptcy Code.

13. The fact that Lenora made some of the charges in connection with her shuttle bus business is of no moment. "The act of embezzlement is committed by an individual, and that individual will not be permitted to shield himself from dischargeability for fraud by asserting he was acting as an employer/officer of the corporation." *Sohoio Chem. Co. v. Berkemeier,* 51 B.R. 5, 6 (Bankr. S.D. Ind. 1983).

---

883, 887 (Bankr. S.D. Tex. 1994).

**FINDINGS OF FACT AND CONCLUSIONS OF LAW- Page - 8**

14. For the foregoing reasons this Court finds that the Defendants' obligation to Venesta in the amount of $26,341 for Venesta's repayment of the unauthorized charges placed on her AMEX account and the Defendants' obligation to Venesta in the amount of $625 for Venesta's repayment of the unauthorized charges placed on her First USA account are non-dischargeable under 11 U.S.C. §523(a)(4).

### C. Attorneys' Fees

15. Under the "American Rule" applied in federal litigation, a prevailing litigant may not collect attorneys' fees from his opponent unless such fees are authorized by federal statute or an enforceable contract between the parties. *See In re Sheridan*, 105 F.3d 1164 (7th Cir. 1997). The only statutory authorization for an award of attorneys' fees in a dischargeablity proceeding is found in 11 U.S.C. §523(d). Section 523(d) gives prevailing debtors a right to attorneys' fees in an adversary proceeding, as follows:

> If a creditor requests a determination of dischargeability of a consumer debt under subsection (a)(2) of this section, and such debt is discharged, the court shall grant judgment in favor of the debtor for the costs of, and a reasonable attorney's fee for, the proceeding if the court finds that the position of the creditor was not substantially justified, except that the court shall not award such costs and fees if special circumstances would make the award unjust.

11 U.S.C. §523(d).

16. With regard to a request by a prevailing creditor for attorneys' fees, attorneys' fees form a part of a bankruptcy claim and can be nondischargeable where the creditor has a contractual right to them valid under state law. *See Jordan v. Southeast Nat'l Bank (In re Jordan)*, 927 F.2d 221, 226-27, *overruled on other grounds by Coston v. Bank of Malvern (In re Coston)*, 991 F.2d 257 (5th Cir. 1993). If the contractual right to attorneys' fees is valid and enforceable, that obligation becomes part of the "debt" deemed non-dischargeable under

§523(a)(2). *See, e.g., In re Sheridan*, 105 F.3d at 1166-1167.

17. In this case, Venesta, as the prevailing creditor, has no statutory right to her attorneys' fees. Venesta failed to establish any contractual right to recover her attorneys' fees from the Defendants. The Court, therefore, concludes that Venesta's request for recovery of her attorneys' fees should be denied.

### D. Prejudgment Interest

18. With respect to Venesta's request for prejudgment interest, determining the dischargeability of debt under 11 U.S.C. §523(a) is purely matter of federal law. Thus, the rate of prejudgment interest is fixed by 28 U.S.C. §1961. *See Travelers Ins. Co. v. Liljeberg Enterprises, Inc.,* 7 F.3d 1203, 1209 (5th Cir. 1993); *In re Brace*, 131 B.R. 612 (Bankr. W.D. Mich. 1991). Whether to award prejudgment interest lies within the sound discretion of the Court. *Jackson County v. United States,* 308 U.S. 343, 352 (1939).

19. In this case, Venesta made payments to First USA and AMEX totaling $2,925 prior to September 12, 1998. Venesta thereby paid for a portion of the Defendants' unauthorized and fraudulent charges to her credit card accounts. Under 28 U.S.C. §1961, the applicable rate of interest as of September 12, 1998 was 4.76%. Interest at that rate shall accrue on the sum of $2,925 from September 12, 1998 through the date of this Court's judgment.

20. With respect to the four payments Venesta made to MBNA in the total amount of $24,041 for repayment of the balance transferred from her AMEX account, it is not clear from the record when these payments were made. The latest possible date is the date she initiated this adversary proceeding, December 26, 2005, which is the date that this Court will use in the absence of any credible evidence establishing an earlier date. Under 28 U.S.C. §1961, the

**FINDINGS OF FACT AND CONCLUSIONS OF LAW- Page - 10**

applicable rate of interest as of that date is 4.96%. Interest at that rate shall accrue on the sum of $24,041 from December 26, 2005 through the date of this Court's judgment.

### III. Conclusion

A fresh start is not promised to all who file for bankruptcy relief, but only to "the honest but unfortunate debtor." *Grogan,* 498 U.S. at 286-87. Here, the Defendants are neither honest nor unfortunate. The Court will enter a judgment for the principal amount of $26,966, plus prejudgment and post judgment interest, consistent with the foregoing findings and conclusions.

To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings as necessary or as requested by any party.

Signed on 8/23/2007

*Brenda T. Rhoades*  MD
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE